1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUSKY INTERNATIONAL TRUCKS,
INC.,

                    Plaintiff,

        v.

NAVISTAR, INC., et al.,

                    Defendants.

CASE NO. C10-5409BHS

ORDER GRANTING
DEFENDANTS' MOTION
TO DISMISS

        This matter comes before the Court on Defendants' motion to dismiss pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon
which relief can be granted.  Dkt. 10.  The Court has considered the pleadings filed in
support of and in opposition to the motion and the remainder of the file and hereby grants
Defendants' motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

        On May 11, 2010, Plaintiff Husky International Trucks, Inc. ("Husky") filed its
complaint in Pierce County Superior Court alleging that Defendants violated RCW
19.86.020 and 19.86.030 and that Defendants' conduct breached their express and
implied obligations to Husky which caused injury to Husky's business and property.  Dkt.
1, Exh. A.  On June 10, 2010, Defendants filed their notice of removal in this Court.  Dkt.
1.  On June 24, 2010, Defendants filed their motion to dismiss the complaint pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. 10.  On July 12, 2010, Husky
responded (Dkt. 14) and on July 16, 2010, Defendants replied (Dkt. 16).  On August 13,

2010, Husky filed a motion for leave to file its amended complaint (Dkt. 17) and its amended complaint (Dkt. 18).  On August 17, 2010, the Court issued an order stating that Defendants' motion to dismiss would be decided after the Court ruled on Husky's motion for leave to amend.  Dkt. 19.  On August 23, 2010, Husky withdrew its motion for leave to amend.  Dkt. 20.  Thus, Defendants' motion to dismiss (Dkt. 10) is now before the Court.

## II. HUSKY'S COMPLAINT

**A.    Factual Allegations**

Navistar manufactures and sells Medium and Heavy-duty trucks under the International brand name.  The company was formed in 1902 and sells its products through a network of dealers.

Husky is a Navistar dealer selling International brand Medium and Heavy Duty trucks.  Navistar entered into a Dealer Sales/Maintenance Agreement with Husky in August 1987.  Husky's three year average sales of International brand Medium Trucks is 139 and Heavy Duty Trucks is 166 of which, 35 are Severe Service Heavy Trucks.  The State of Washington normally is a purchaser of all these types of trucks.

Prior to 2006, Pacific Coast Truck Center (PCTC), the former independent International Truck Dealer in Tacoma, had been the only International Truck Dealer to bid to the State of Washington.  Husky did not bid because when PCTC delivered a truck in Husky's Area of Responsibility (AOR), PCTC gave Husky the International Delivery to User (DTU) credit and a portion of the sales profit.  The sale need not be directly to a state agency; rather, it could come from any local government electing to purchase a truck off the State of Washington bid.

On or about August 30, 2006, Cascadia International LLC, a Delaware for profit company, was created, and it operates an office in Tacoma.  On information or belief, Husky alleges that Cascadia is a Navistar Deal Cor operation with all the voting stock being held by Navistar.  Washington State Corporation Division records indicate that Cascadia's managers are Larry Wake, C. Green Paul Grzemski, and Jeffrey Bowen, all having an address of Warrenville, Illinois, the home office of Navistar.  On information or belief, Husky alleges that they are employees and managers of Navistar.

On August 18, 2008, Husky sent Navistar a letter that complained about unfair and deceptive acts and practices or unfair methods of competition being committed by Navistar through its Deal Cor Dealer Cascadia International LLC.  The acts included hiring Husky employees, who had access to Husky's proprietary and confidential information.  Husky believes that Navistar through its Deal Cor Dealer has misappropriated and used this information and has engaged in this and other unfair and deceptive acts and practices and unfair methods of competition

which are not referenced in the August 18, 2008 letter, including acts which occurred after the letter was sent.

Almost a year after Husky had sent the August 2008 letter, the Washington State Department of General Administration issued on July 23, 2009 an Invitation for Bid regarding Various Cab & Chassis – including Hybrids for an agreement known as Contract No. 02709. The invitation solicited bids for the purchase of over 172 trucks which could be satisfied by International brand trucks. The bids, for a three-year contract, were to be used by the Washington State Department of Transportation (WSDOT). The contract, however, could also be used by all members of the Washington State Purchasing Cooperative which were authorized to utilize the contract. The projected purchases by WSDOT over the contract's term are estimated to be approximately $28,500,000 based on purchases already made in the first quarter of 2010 and annualized for the three-year term.

The bids were initially due on August 13, 2009 but the bid date was extended to August 27, 2009. Prior to the date for the submission of bids, Navistar informed Husky that Navistar would give Cascadia International LLC a Special Price Allowance (SPA) for the trucks and not give the same SPA to Husky. On August 5, 2009, Husky's counsel sent Navistar's counsel a letter that objected to the proposed price discrimination through variances in the SPA between dealers. Although it had taken action to equalized the SPAs in the past, Navistar failed to respond to Husky's objection.

Husky and Cascadia both submitted bids. Public records reflect a total of five bids were received. The bid results indicate that Cascadia's bid was substantially lower than Husky's in most categories. The contract was awarded to Cascadia on October 14, 2009. Cascadia's price was lower than Husky's cost to purchase the same trucks from Navistar, because Navistar authorized SPAs to sell the trucks to Cascadia substantially higher than the SPAs given to Husky.

Husky and Cascadia are direct competitors. Higher SPAs and special marketing allowances repeatedly granted to Cascadia create a substantial competitive disadvantage to Husky, impairing its ability to compete. On information or belief, Husky alleges that Cascadia has sold to local government entities and Truck Original Equipment Manufacturers (TEMs) International branded trucks using State Bid discounts to the entity when the entity was not entitled to such discounts. This was and is to the detriment of Husky. Navistar's practices have caused Husky to lose customers and profits, injured its business and property, and resulted in damages and are in restraint of trade.

To gain and misappropriate confidential information such as customer lists, customer contact information, pricing strategies, and Husky's three-year growth plan, Cascadia offered key individuals lucrative financial packages to leave Husky and work for Cascadia. They were successful with Chris Stephens in April 2007, who was Husky's leading leasing salesperson. In April of 2007, they hired John Grusz, Husky's sales manager since 1985 making him General Manager. In November of 2009, they hired Bob Radowick, a Husky journeyman parts salesperson since 1985, for a parts position.

Dkt. 1 at 9-12 (paragraph numbers and footnotes omitted).

**B.    Husky's Claims**

Based on the above factual allegations, Husky alleges that Navistar's conduct is an unfair or deceptive act or practice in violation of RCW 19.86.020 and 19.86.030 and has caused injury to Husky's business and property.  Dkt. 1 at 12.  In addition, Husky alleges that Navistar's conduct breached its express and implied contractual and promissory obligations to Husky and has caused injury to Husky's business and property.  *Id*.

### III. DISCUSSION

**A.    Standard for Deciding Motions to Dismiss Under Rule 12(b)(6)**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory.  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  A court accepts the factual allegations in the complaint as true for purposes of deciding the motion to dismiss.  *Id*.  To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555-56 (internal citations omitted).  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

**B.    Husky's Claim Under RCW 19.86.020**

Washington's Consumer Protection Act ("CPA") governing unfair competition and unfair, deceptive, and fraudulent acts or practices, states:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade

commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

It is, however, the intent of the legislature that *this act shall not be construed to prohibit acts* or practices which are reasonable in relation to the development and preservation of business or *which are not injurious to the public interest,* nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

RCW 19.86.020 (emphasis added).  To prevail in a private CPA suit, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 37 (2009) (citing *Hangman Ridge Stables v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 784 (1986)).  In *Panag*, the Washington Supreme Court explained in a footnote that "[a] CPA claim may be predicated on either a per se violation of the statute or on deceptive practices unregulated by statute but involving the public interest."  166 Wn. 2d at 37 (citing *Anhold v. Daniels*, 94 Wn. 2d 40 (1980)).  In *Hangman Ridge*, the court stated that the first two elements of a CPA claim "may be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred in the conduct of any trade or commerce [or] by a showing that the alleged act constitutes a per se unfair trade practice."  105 Wn. 2d at 785-86.

### 1.  Application of the "substantial portion of the public test" to unfair competition claims

Husky argues that "[t]he 'deceive a substantial portion of the public' standard does not apply in this case."  Dkt. 14 at 6.  In support of this argument Husky quotes from the unpublished opinion in *Seven Gales Corp. v. Sterling Recreation Org. Co.*, 1987 WL 56622 (W.D. Wash. June 25, 1987), in which the court held that "'a capacity to deceive' is not a requirement under the portion of [RCW 19.86.020] which forbids unfair methods of competition.  This is clear from the language of the statute and from relevant case

precedent." *Seven Gables*, 1987 WL 56622 at *10. The court in *Seven Gables* further

explained in a footnote that

> The unfair methods of competition provision of RCW 19.86.020 is taken
> verbatim from section 5(a)(1) of the Federal Trade Commission Act, 15
> USC § 45(a)(1), and federal precedent under section 5(a)(1) therefore
> provides guidance for deciding what kind of conduct may constitute an
> "unfair method of competition."

1987 WL 56622 at *10 n.28 (citing *State v. Black*, 100 Wn.2d 793, 799 (1984)).

While § 5(a)(1) of the Federal Trade Commission Act may provide guidance as to

what conduct can be considered an unfair method of competition, in *Black* the

Washington Supreme Court analyzed what constitutes unfair methods of competition

under RCW 19.36.020. The court stated that:

> [T]he phrase "unfair methods of competition" has never been defined by
> this court. The United States Supreme Court has said that the term can be
> defined only by "the gradual process of judicial inclusion and exclusion."
> *FTC v. Raladam Co.*, 283 U.S. 643, 648 (1931). . . . The *Raladam* Court
> adopted a standard of substantial injury to or tendency to injure the business
> of a competitor. *Id*. at 652.
>
> * * *
>
> We choose, however, not to adopt the federal court definition of unfair
> method of competition.
>       In passing the Consumer Protection Act, the Legislature specifically
> recognized that acts or practices which are reasonable business practices or
> *which are not injurious to the public* are *not* the kind of acts sought to be
> prohibited. RCW 19.86.020. This consideration, which is not part of the
> federal statutory scheme, warrants a narrower interpretation of the words
> "unfair method of competition" than that given by federal court.

*Blake*, 100 Wn. 2d at 801-803 (emphasis added).

Defendants argue that the holding in *Seven Gables* is incorrect and that the

"substantial portion of the public test" applies to all claims brought under 19.86.020. Dkt.

16 at 8-11. The Court agrees. The Washington Supreme Court clearly held in *Black* that

the legislature narrowed the application of RCW 19.86.020 by requiring that an act or

practice be injurious to the public in order to constitute a claim under the statute. Thus,

the court concluded that this narrowing deviates from the federal statutory scheme and

"warrants a narrower interpretation of the words 'unfair method of competition' than that

given by federal court." *Blake*, 100 Wn. 2d at 803.

In *Buffets, Inc. v. Klinke*, 73 F.3d 965 (9th Cir. 1996), the Ninth Circuit applied the "substantial portion of the public" test when it granted the defendants' motion for summary judgment on the plaintiffs' claim for unfair competition under RCW 19.86.020. 73 F.3d at 970.  The plaintiffs alleged that the defendants had improperly acquired their employee manual and recipes in violation of Washington's CPA.  *Id.* at 966-67.  The Ninth Circuit based its decision on the plaintiffs' inability to show that additional plaintiffs had been or would be injured by the defendants' conduct, however unethical, in the exact same fashion as the plaintiffs were injured.  *Id.* at 970.

Based on the Washington Supreme Court decisions in *Blake* and *Hangman Ridge*, the Ninth Circuit's decision in *Buffets*, as well as a plain reading of the statute, the Court concludes that the "substantial portion of the public" test applies to all claims brought under RCW 19.86.020.

### 2.   Application of the "substantial portion of the public" test to Husky's claim

Husky maintains that even if the "substantial portion of the public" test applies to its RCW 19.86.020 claim, the test is satisfied because

> the pricing and allowance conduct, the confidential information and related unfair acts and unfair methods of competition, directly injure Husky and Motor Trucks (the two International dealers) and injure private purchasers of the products, the state and local governments that purchase those products and thereby the taxpayers and general public.

Dkt. 14 at 6.

Defendants argue that Husky cannot satisfy the "substantial portion of the public" test as a matter of law.  Defendants assert that based on *Buffets* and *LaFrance*, Cascadia's hiring of three of Husky's employees who allegedly misappropriated confidential information cannot be considered to be directed at a substantial potion of the public.  Dkt. 16 at 11.  Defendants also contend that Husky's assertion in its response to the motion that its RCW 19.86.020 claim is also based on Navistar's pricing to Cascadia is without merit.  *Id.* at 11-12.  First, as argued below with respect to Husky's RCW 19.86.030 claim, a parent's pricing to its wholly-owned subsidiary is not subject to price

discrimination/unfair business practices claims because a parent and its subsidiary are treated as one single entity for such purposes. *Id*. at 12. Moreover, Defendants maintain that the DOT, and thus the taxpayers, received a lower price which thereby benefits taxpayers and fails to show an injury to the substantial portion of the public. *Id*. Rather, the only injury Husky has shown is its own in not being awarded the DOT contract. *Id*.

The Court agrees with Defendants that Husky has failed to satisfy the "substantial portion of the public" test. In *Buffets*, the Ninth Circuit held that the injuries to the plaintiffs and the industry in general, based on the defendants' improper acquisition of plaintiffs' recipes and employee manual, were insufficient to constitute an injury to a substantial portion of the public and therefore did not support a claim under RCW 19.86.020. 73 F.3d at 970. The same reasoning applies here. Husky fails to show how Defendants' conduct, in hiring Husky's former employees, has the capacity to injure a substantial portion of the public in the exact same fashion as Husky was injured. *See Buffets*, 73 F.3d at 970. In addition, Husky cannot show that Navistar's conduct in providing SPAs to Cascadia, Navistar's subsidiary, supports a claim under RCW 19.86.020. *See infra* Section III.C; *see* Complaint, Dkt. 1, ¶ 2 ("Navistar owns and operates Cascadia"). Regardless, as argued by Defendants, Husky has failed to show how a substantial portion of the public was injured by such conduct when it resulted in a lower price to the government to purchase International trucks. Therefore, the Court concludes that Defendants' motion to dismiss Husky's RCW 19.86.020 claims is granted.

**C.    Husky's Claim Under RCW 19.86.030**

"Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." RCW 19.86.030. In *Black*, the Washington Supreme Court explained that "RCW 19.86.030 prohibiting contracts or conspiracies in restraint of trade is our State's equivalent of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1." 100 Wn. 2d at 967. In 1984, the United States Supreme

Court decided the case of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752

(1984).  The Third Circuit's summary of the holding in *Copperweld* is instructive:

> The [*Copperweld* court] considered the scope of Sherman Act § 1's word "conspiracy."  It held that the word did not cover an agreement between a wholly owned subsidiary and its parent, because a wholly owned subsidiary could not "conspire" with the parent.  That, the Court said, is because they have "a complete unity of interest.  Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one . . . . [And] [t]hey share a common purpose whether or not the parent keeps a tight rein over the subsidiary. . . ." *Id*. at 771.  The Court added that a "corporation has complete power to maintain" a portion of the enterprise either in the form of an unincorporated division, or in the form of a separately incorporated subsidiary.  But, the "economic, legal, or other considerations that lead corporate management to choose one structure over the other are not relevant to whether the enterprise's conduct seriously threatens competition." *Id*. at 772.  For these reasons, the Court held, "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. *Id*. at 771.

*Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 19 F.3d 745, 749 (1st

Cir. 1994).

Defendants maintain that under *Copperweld's* single-seller rule, a parent

company's dealings with a subsidiary cannot, as a matter of law, constitute an illegal

conspiracy, and that Navistar and Cascadia must be treated as a single entity for purposes

of antitrust price discrimination.  Dkt. 10 at 15-16.  Thus, according to Defendants,

Husky's RCW 19.86.030 price discrimination claim must fail because "no price

discrimination can arise from the exchange of goods between a parent company and its

subsidiaries because no 'sale' occurs.  Rather a non-sale 'transfer' is deemed to take place

for purposes of price discrimination analysis." *Id*. at 16.  In support of their argument,

Defendants cite to a Ninth Circuit case in which the court affirmed the district court's

summary judgment dismissal of a price discrimination claim because the transaction at

issue was between a parent and its subsidiary and therefore the price paid to the parent

was "a transfer price, not a sale." *Rebel Oil Co. v. Atlantic Richfield Co.*, 146 F.3d 1088,

1096 (9th Cir. 1998).

ORDER - 9

1    Husky argues that there is a factual question as to whether Cascadia is operating as

2    a "bona fide subsidiary" and that the Court should allow additional discovery on the issue

3    to decide whether Cascadia and Navistar should be treated as a single economic unit.

4    Dkt. 14 at 10-11.  In addition, Husky contends that transactions between subsidiaries

5    could be sales.  *Id.* at 11 (citing *Zoslaw v. MCA Distrib. Co.*, 693 F.2d 870 (9th Cir.

6    1982).

7    Although Husky makes the argument that Cascadia is not a "bona fide subsidiary"

8    (Dkt. 14 at 10), it does not dispute that it is owned and operated by Navistar.  *See* Dkt. 1,

9    ¶ 2.  Rather, Husky appears to argue that under the "dominion and control" test, Navistar

10   does not assert sufficient control over Cascadia to preclude a pricing discrimination claim

11   based on Navistar's pricing to Cascadia.  Dkt. 14 at 10-12.

12   The Court concludes that Husky's price discrimination claims under RCW

13   19.86.030 must fail because Cascadia is a subsidiary of Navistar. The courts in

14   *Copperweld* and *Rebel Oil*, both decided after the Ninth Circuit case cited to by Husky,

15   recognize that entities in a parent/subsidiary relationship are treated as a single economic

16   unit.  *Copperweld*, 467 U.S. at 771; *Rebel Oil*, 146 F.3d at 1096.  Neither of those cases

17   recognize the theory advanced by Husky that a "dominion and control" test should be

18   applied to determine whether Cascadia is operating as a bona fide subsidiary.  *See* Dkt. 14

19   at 10-11.  Thus, the SPA given to Cascadia by Navistar was in fact a transfer, not a sale,

20   and cannot constitute a conspiracy as it was given by a parent to its subsidiary.

21   Therefore, the Court concludes that Defendants' motion to dismiss Husky's RCW

22   19.86.030 claims is granted.

23   **D.    Husky's Contract Claim**

24   In *Berg v. Hudesman*, 115 Wn. 2d 657, 666 (1990), the Washington Supreme

25   Court "adopted the 'context rule' and recognized that intent of the contracting parties

26   cannot be interpreted without examining the context surrounding an instruments's

27   execution."  *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn. 2d 493, 502

28

(2005) (explaining the holding in *Berg*).  The court concluded in *Berg* that extrinsic

evidence was admissible to aid in understanding the parties' intent with respect to a

specific term in their contract.  115 Wn. 2d at 672.

Since *Berg*, the Washington Supreme Court has sought to clarify that the holding

in that case did not authorize an unrestricted use of extrinsic evidence in contract analysis.

*Hollis v. Garwall, Inc.*, 137 Wn. 2d 683, 693 (1999).  In *Hearst*, the court explained that:

> surrounding circumstances and other extrinsic evidence are to be used "to
> determine the meaning of *specific words and terms used*" and not to "show
> an intention independent of the instrument" or to "vary, contradict or
> modify the written word."  *Id.* at 695-96 (emphasis added).  *See also U.S.
> Life Credit Life Ins. Co. v. Williams*, 129 Wn. 2d 565, 571 (1996) (court's
> intention in adopting the "context rule" was not "to allow such evidence to
> be employed to emasculate the written expression of" the meaning of the
> contract's terms); *In re Marriage of Schweitzer*, 132 Wn. 2d 318, 327
> (1997) ("context rule" cannot be used to show intention independent of the
> instrument); *Go2Net, Inc. v. C I Host, Inc.*, 115 Wn. App. 73 (2003)
> (admissible extrinsic evidence does *not* include evidence of a party's
> unilateral or subjective intent as to contract's meaning).
>
> Our holding in *Berg* may have been misunderstood as it implicates
> the admission of parol and extrinsic evidence.  We take this opportunity to
> acknowledge that Washington continues to follow the objective
> manifestation theory of contracts.  Under this approach, we attempt to
> determine the parties' intent by focusing on the objective manifestations of
> the agreement, rather than on the unexpressed subjective intent of the
> parties.  We impute an intention corresponding to the reasonable meaning
> of the words used.  Thus, when interpreting contracts, *the subjective intent
> of the parties is generally irrelevant if the intent can be determined from the
> actual words used*.  We generally give words in a contract their ordinary,
> usual, and popular meaning unless the entirety of the agreement clearly
> demonstrates a contrary intent.  *We do not interpret what was intended to be
> written but what was written.*

*Hearst*, 154 Wn. 2d at 503-04 (internal citations omitted) (emphasis added).

Here, Husky and Navistar entered into a Dealer Sales/Maintenance Agreement (the

"Contract") on August 20, 1987.  Dkt. 11-2.  The Contract states in pertinent part:

> (iv)  Trade Area refers to the non-exclusive geographical area which
> may be assigned to the Dealer [*i.e.*, Husky] by Navistar, and changed by
> Navistar from time to time, considered as the Dealer's primary area of
> responsibility for the sales of goods covered by the Agreement.
>
> * * *
>
> 4.  Prices, discounts ad terms applying to the goods ordered by the
> Dealer shall be those established by Navistar and in effect on the date of
> shipment of goods to the Dealer.  Such prices, discounts and terms shall be
> subject to the conditions stated in the applicable Schedules of Discounts and
> Terms.

* * *

11.  The Dealer recognizes and understands that Navistar reserves the right to sell, lease, or loan the goods covered by the Agreement for use in the Dealer's Trade Area to:

* * *

(b)  State or local governments and any department or agency thereof;

(c)  Dealers of distributors of Navistar for use by such dealers or distributors in the operation of their business;

* * *

The Dealer also recognizes and understands that Navistar reserves the right to sell, lease or loan the goods covered by the Agreement through:

(a) Navistar-owned retail outlets wherever located; and

(b) Other dealers of Navistar wherever located.

Dkt. 11-2 at 4, 5, & 10.

Husky's complaint seeks relief for breach of implied and express contractual obligations.  Dkt. 1 at 12.  However, Husky states in its response to Defendants' motion to dismiss that it is no longer pursuing a claim for breach of an implied contract.  Dkt. 14 at 12.  In support of its claim for breach of the express contract, Husky asserts in its response that the Contract "does not specifically reserve to Navistar a right to sell to a DealCor dealer or any other dealer for resale to the state or local government or for the dealer not to act fairly."  *Id.* at 14.  Next, Husky argues that the Contract "does not reserve to Navistar a right to discriminate in price or allowances nor to act arbitrarily."  *Id.* Finally, Husky objects to Defendants' request that the Contract claims against Cascadia be dismissed because Husky has not seen the terms of the agreement between Navistar and Cascadia and argues that it "may be a third-party beneficiary to those claims."  *Id.* at 14-15.

Defendants maintain that the Contract provides Navistar with the unconditional right to compete and specifically states that Navistar may sell its trucks to "(a) Navistar-owned retail outlets wherever located; and (b) Other dealers of Navistar wherever located."  Dkt. 16 at 17 (quoting Dkt. 11-2 at 10).  Thus, according to Defendants, a duty of good faith cannot be applied to minimize these unconditional rights.  Dkt. 16 at 17 & n. 16.  Next, Defendants assert that the Contract allows Navistar complete discretion to set the prices paid by Husky, and therefore, the Contract bars Husky's claim that Navistar is

required to provide equal SPAs or pricing to dealers of its trucks.  *Id*. at 17 (citing Dkt. 11-2 at 4 which states "Prices, discounts and terms applying to the goods ordered by the Dealer shall be those established by Navistar").  Finally, Defendants argue that Husky's "course of dealing" and "context rule" arguments do not change the fact that the express terms of the contract control and that those terms explicitly provide Navistar the unconditional right to compete and "unfettered pricing discretion."  *Id.*

The Court concludes that Defendants' motion to dismiss Husky's Contract claims should be granted.  First, although a good portion of Husky's response to the motion to dismiss discusses the "context rule," Husky never states what terms in the Contract it asserts would require using extrinsic evidence in their interpretation.  The terms of the Contract at issue are clear.  Although Husky appears to argue that it had a different intent in forming the Contract than Navistar, such a subjective intention is irrelevant where, as here, the intention of the parties can be determined by the actual words used in the Contract.  *See Hearst*, 154 Wn. 2d at 503-04.  As asserted by Defendants, the express terms of the Contract allow Navistar to sell its trucks to any dealer and to establish prices, discounts, and terms that apply to the goods ordered by Husky.  Dkt.11-2 at 4, 10. Moreover, the Court concludes that Husky cannot assert a contract claim against Cascadia based on the possibility that Husky is somehow a third-party beneficiary to claims based on the agreement between Cascadia and Navistar.  Therefore, the Court concludes that Defendants' motion to dismiss is granted as to Husky's Contract claims.

**E.    Dismissal with Prejudice**

Defendants assert that if the Court grants their motion to dismiss, such dismissal should be with prejudice because any amendment of Husky's complaint would be futile. Dkt. 10 at 19 (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)). Defendants maintain that Husky's complaint cannot be amended to allege: (1) that Defendants' conduct constituted an unfair or deceptive act or practice that has the capacity to deceive a substantial portion of the public; or (2) that Navistar and Cascadia

conspired in restraint of trade or that a sale took place between the two companies because Cascadia is a wholly-owned subsidiary of Navistar; or (3) that Cascadia breached a contract as there is no contract between Cascadia and Husky or that Navistar's pricing breached its Contract with Husky because the Contract does not restrict Navistar's ability to set prices to Husky.  Dkt.10 at 19-20.

Husky did not respond to Defendants' request that dismissal be with prejudice. *See generally* Dkt. 14.  Based on Husky's lack of response (*see* Local Rule CR 7(b)(2)) and the Court's agreement with Defendants that any amendment to Husky's complaint to attempt to support its current claims against Defendants would be futile, the Court concludes that dismissal in this action should be with prejudice.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 10) is **GRANTED** and this action is **DISMISSED with prejudice**.

DATED this 14th day of October, 2010.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 14